And I want to thank Ron Black, Kaplan Firm, for agreeing to be amicus here. It's been of great help to the court. All right. We'll begin. Thank you, Your Honor. My name is Alexander Bilas. Sorry. May it please the Court? Yes. My name is Alexander Bilas, and I represent the appellants, Brian Barner, Daryl Baker, and Ronald Long. If possible, I would like to reserve three minutes for rebuttal. All right. Perhaps in between the merits and the jurisdictional arguments.  Yes. Thank you, Your Honor. After the jurisdictional, we'll do the rebuttal on that. Perfect. Oh, and also Deckert, the Deckert Firm, also for my colleague, Judge Jordan, reminded me there's not just one, but two. We're happy to help. In what order are you going to address the jurisdictional issues in terms of the cases? Well, the issues sort of blend over the three cases, so I was going to first address the prison mailbox rule, which applies or could apply to all three. We have a feedback. Do you think we're okay? All right. As I was saying, the prison mailbox rule could apply to all three cases. Then I was going to address whether or not Mr. Barner's first notice of appeal should be reinstated. And finally, I was going to address whether or not Mr. Barner and Mr. Long's post-judgment motions should be considered timely so that they told their time to appeal. All three of these appellants have some striking similarities, Your Honor. All three are pro se prisoner litigants.  And all three are now facing the prospect of being shut out of court for no fault of their own. And this court does have the power to hear all three of these appeals. With regards to the prison mailbox rule, this court has squarely held in United States versus Fiorelli that when calculating whether post-judgment motions are timely, the court should exclude any time that is lost due to prison delay. What about Poole, which unfortunately didn't mention Fiorelli, but seems to go diametrically the other way. It does. However, under this court's prior panel rule and IOP 9.1, Fiorelli was decided before Poole, and so it is the controlling opinion. Is there any way to distinguish Poole without just saying, oops, our bad? It's difficult. It did not mention Fiorelli. It also, the basis for this distinction that it drew between the case in Poole and the case in Grana, which was also a prior decision where this court squarely held that the court should exclude time lost due to prison delay, the basis for its distinction between it and Grana was that there was no criminal rule in Grana that barred, that applied in the same way that civil rule 77-D might apply in Poole. Well, and we know that that's not true. Right. Grana considered rule 77-D, and also there is a criminal rule that is analogous to 77-D. But at bottom, Poole really said we've got 2107, and 2107 is a statute, so it's mandatory, and then that was confirmed in the Bowles case. So wouldn't we really say that in light of Bowles, I mean our IOP notwithstanding, but in light of Bowles, since we have 2107, that Fiorelli is really no longer good law? No, because Bowles didn't actually change anything. It just reaffirmed that 2107 was jurisdictional. Houston, the original Supreme Court case that promulgated the prison mailbox rule. Criminal case. Houston was, let me double check. It was a habeas case. It was habeas? Yeah. Okay. So Houston was a civil case, and either way, there is a criminal rule that is analogous to rule 77-D, as I was saying. But we don't have a statute. We don't have a statute. You're right, you're right. But Houston was dealing with a jurisdictional statute, so was Fiorelli, and they assumed that those statutes were jurisdictional, and yet even in the face of jurisdictional statutes, they said that the prison mailbox rule would apply. Well, in Poole, the kind of delay, was it really a prison mailbox kind of issue? There was nothing about internal prison operations that was going on in Poole. He moved, and there was this sort of mail delay that could happen to somebody in prison or out of prison, right? Which is kind of the same as here. Not necessarily prison delay here, is it? Well, in two of the three cases, it's very definitely that there's prison delay involved because the prisoners were being transferred to new prisons, and the prisons didn't forward the mail to them in a timely fashion. Baker wasn't. Baker wasn't prison delay. Baker was in prison. All three of them were in prison at the time. No, but I mean, Baker was not prison delay, was he? Oh, no. Yes, Baker was prison delay. In fact, the district court specifically said it was through no apparent fault of his own that he did not receive the judgment in a timely fashion. Well, I wasn't sure whether it was the prison or the clerk. There is some suggestion in the record that it might have been the clerk's fault as well, but it definitely was sent to the prison. And then let me just double check my notes. Would habeas be different from 1983 actions? I mean... I don't think so. The civil rules apply, and that's one of the holdings in Fiorelli is that the civil rules were applying, and it's a habeas case. I mean, with Poole, you're right. You might be able to say there's no prison delay there, or there might not be a delay based on the prison, but here we do have prison delay. Right. Well, I'm just asking, like, if we did say something like that and it were a credible basis for distinguishing Poole, then you would be just as happy, or your clients, I should say, because... Yes. We would be then in a position to kind of set that to the side and look at Fiorelli as the operative precedent, right? Yes. Yes. Absolutely. I would be very happy if you found a basis for distinguishing Poole. It did involve a prison. Is that one that would stand up to scrutiny? I don't know, Your Honor. There was a prisoner involved in Poole, and I believe there was an alleation of prison delay. It was a little unclear. Under Fiorelli and Grana, what the court probably should have done is remanded it for fact-finding to see if there was prison delay. Well, let's get back to Judge Randolph's question about Bowles. I presume that your point would be that no statute, we're dealing with claim processing, so it's not an impediment. Well, the prison mailbox rule would... Actually, the way it's been applied by this court in Grana and Fiorelli and by the Supreme Court in Houston, it doesn't seem to be limited to whether or not whatever it's modifying is jurisdictional or claims processing. I think the way to think about it is it's not actually extending the jurisdictional time. Instead, it's defining when that time starts and stops, and that is something that is claims processing and left to the courts to promulgate rules about. Although in Houston, the way it was reasoned, it was the word filed meant when delivered to prison officials. Right. Okay, that's one thing. Then that kind of fits. You can say we're still talking about when something's filed. Right. But when you say incoming mail that is delayed by prison... Right. ...then you're getting beyond the rule. Well, unless you construe what you're saying, basically defining what entered means for purposes of 2107. And when the court issues its judgment for a pro se prisoner who alleges that there was prison delay, the court would be saying that basically the judgment was not entered until it was actually handed to the prisoner. Or served. Right. In that way, you can basically... Say you're applying the rule and all... Right, and it fits into the statute that way. You're actually just interpreting the statute. Help me out with Barner, because you have said, oh, all three of these folks are peas in a pod on this. But isn't Barner in the circumstance of just having misunderstood the rule, unlike his friends Long and Baker? It's unclear. And as we said in our brief, Mr. Barner is in a slightly different position. And whether or not there was prison delay in his case, it's not clear. And for that reason, we recommend if the court finds that this is the only reason that it might have jurisdiction over Mr. Barner's appeal, it should remand for a fact-finding in his case. I think with Mr. Baker and Mr. Long, it's pretty clear that prison delay was involved here, and a fact-finding determination is probably not necessary for their cases. But there is an allegation that the prison may have delayed Mr. Barner's receipt of the order. Okay. I was under the impression that it was just a straight-up mistake. Yeah, that's what I thought too. I didn't see anything. Well, if you look at his – I can go to the exact page. I'll have to find it for rebuttal. There is a letter that he filed with the district court. It was sort of construed as a motion where he makes an allegation that sounds like it might have been the fault of the prison. It also – he might have just been talking about the mail being swelled. And in that case, it's not the prison's fault, and his motion – his post-judgment motion would be late. But if it was the prison's fault, I think that time should be excluded. So for that reason, it should be remanded for fact-finding if this is the only basis the court has to hear his appeal. But do you concede that if there isn't real prison delay here, his argument runs totally counter to Lizardo? Well, I think that's a slightly separate issue. I think that what we've proposed are independent grounds for relief. The prison mailbox rule, if it applied in Mr. Barner's case, would make his post-judgment motion timely even under Lizardo and under those rules. But if there is no prison – I think his second notice of appeal runs up against Lizardo. It's all fours, right? Yes. However, Mr. Barner also has a second reason why you might be able to hear his appeal. His first – He filed an earlier notice of appeal. And it was dismissed for failure to pay the filing fee. Well, it's unclear why it was dismissed. The clerk's order said that it was dismissed for failure to prosecute, but it cited two different rules. One which talks about paying filing fees and one which talks about how you have to file a brief. But that first appeal, his notice of appeal, was filed while a post-judgment motion was pending in the district court. And under Appellate Rule 4A, 4B, a notice of appeal that is filed while a post-judgment motion is pending in the district court is not effective and becomes effective when the district court rules on the post-judgment motion. And while that notice of appeal is ineffective, this court and the clerk did not have the power to take any action on his notice of appeal. Well, but even before it would have been held to be effective later, the threshold issue of it even being properly landed, i.e., no fee, no brief, that could make it be tossed out even before awaiting determination on the post-judgment motion, couldn't it? I don't think so. What's a clerk's office to do? I think it's supposed to let it sit there. And it's not allowed to take any action on it. If you think about it, he tried to do everything he could to appeal his decision. He filed a timely notice of appeal, and he filed a notice of appeal after his post-judgment motion was denied. But did he file something that falls within 4A.4? Yes. He filed a Rule 59 motion. And under 4A.4B, that should have made his notice of appeal, that was what was pending, and it should have made his notice of appeal ineffective and become effective when the court decided it. What would your response be if it was proposed to us that Fiorello's vitality is not long for this world and that we should really focus on 4A.6 to the extent that we wanted to create a rule that would have even applicability? Well, it would run counter to a few things. First, the policy reasons why Houston and Fiorello and Grana embraced the prison mailbox rule would still apply. Even if a prisoner could file a motion to reopen his time to appeal, those time limits run out eventually. And so without the prison mailbox rule in play, a prison might be incentivized to hang on to the mail much longer until the time to reopen, 180 days, runs out, and then the prisoner is out of luck without the prison mailbox rule. Well, but then you go and get the statute changed. You're right, Your Honor. Or get the earlier word changed to later. It might help to have a statute changed, but I don't think it's necessary. I think the Supreme Court faced what it considered to be a jurisdictional time limit in Houston, and it said it's okay. This is a special case where pro se prisoners are different. They do not have control over the mail, and they do not have the freedom to contact the clerk's office to find out what's going on with their case. I don't want to be up to, so I can seldom help myself. Let's go back to Barnard for a second. Does it make a difference when he filed that post-judgment motion? It doesn't have to be a timely filed post-judgment motion. Are you talking about for the 4A, 4B argument? Yeah. Well, Appellee's made that argument that there should be a timeliness requirement in 4A, 4B. But isn't that the rules requirement? No. Isn't that the case law's requirement? No, it's not the case law's requirement. The rule, 4A, 4B itself does not have a timeliness requirement in it. What they're trying to do is, what 4A, 4B does have is it says any time you file a motion listed in 4A, 4A, the notice of appeal becomes effective when that motion is decided. And they're trying to import the timeliness requirement from 4A, 4A into 4A, 4B. Well, there's a Second Circuit case that's ongoing here in the Windsor case, right, that talks about it in terms of timely file. I mean, isn't it kind of inherent in the notion? It does have a part of timely file. That's 4A, 4A, Your Honor. Oh, I'm sorry. Right. But same idea, right? Wouldn't it be a real bootstrap to say, okay, you can get around all this. If you're untimely, it doesn't make a difference under 4A, B? Well, besides the timeliness word not being in 4A, 4B, there are good reasons not to put a timeliness requirement into that rule. First, it would undermine the purpose of the rule, which is when a post-judgment motion is filed that there's a chance that the rights of the parties could be modified. And while there's a chance of that, the circuit court shouldn't start acting on the appeal that's been filed because everything could change, even if the motion is untimely. Because, for instance, if a district court finds that there was prison delay and decides that the motion was actually timely, something that might have on its face looked untimely could then be considered by the district court, and it might alter the rights of the parties. So it really would kind of be unworkable in practice. The circuit court wouldn't know whether or not a post-judgment motion is timely or not for purposes of determining whether it can proceed on the notice of appeal. Well, it seems like it would extend the tolling to be a way around the 4A tolling provision. Well... You know, if you filed untimely, then you have appeal, then your appeal runs from a later date, so you've kind of cured... If you look at it in this actual case, what he did was file a timely notice of appeal, and he also had filed what might be an untimely post-judgment motion. The court probably shouldn't have gotten rid of that first appeal, because by getting rid of it and then holding his post-judgment motion to be untimely, he then has no way of appealing the original decision. Well, he should have paid the filing fee. Yeah. Well, when you say they shouldn't have gotten rid of that first appeal, I mean, if he doesn't follow the rules to have an appeal, why should it hold onto it? Well, you know what? You didn't pay the fees, but no big deal. Well, first of all, he wasn't required to follow the rules other than to file his notice of appeal because it was ineffective until the district court decided the post-judgment motion. Second, he didn't need to pay the... Go back on that, because that seems like you're putting the rabbit in the hat there. Okay. If what you're saying is you really don't have to file, you can file the most out-of-order notice of appeal in the world and have that preserve everything that follows if only you have a post-judgment motion in the district court including an untimely post-judgment motion. I mean, doesn't that just start to make the hash out of the rules? Well, I think that when a litigant is presented with the possibility that his post-judgment motion was late, I think he has to file a notice of appeal because otherwise he might be shut out of appealing late. Nobody's questioning that. The question is, is the clerk's office required to accept an appeal which on its face is noncompliant? You mean a noncompliant notice of appeal? That's what I was going to get to next. I don't think it was noncompliant. He was proceeding IFP before the district court, so he shouldn't have had to pay filing fees. It's my understanding of those rules. Stay with me up a level of this. Yes, I understand. Not this case. Okay. Assume it's noncompliant, the notice. Let's say something's noncompliant or perhaps they know they're trying to do a PCL appeal. That's what happened in a Seventh Circuit case. It's possible that this court would have the power to dismiss the appeal as a sanction on the appellant. And because this court's – it makes sense that it should have sanction ability, even if it doesn't have the ability to dismiss his appeal on the merits. So, I mean, that would be one way around that problem. Here, however, I mean, you don't want me to get back to this case, but I think what he did was right. And if we don't – You're saying what the court did was wrong and we're having problems figuring out how that could be wrong. If he didn't do what he did, there really would be no way of him appealing. Well, that's just not true. He should have filed a motion for reconsideration in a timely manner. He did. I'm sorry. In the Third Circuit, he filed a motion for reconsideration of this court's dismissal of his first appeal. That's what I was thinking. It's timely. You require us to assume your facts, which are that the clerk's office was wrong in thinking that his appeal was deficient. You're right, Your Honor. So, I mean, the answer to your question is if he files a proper appeal, then, yes, it's wrong to dismiss it. But if it's a deficient appeal, there's nothing in error in booting it, right? I think that – perhaps not. But I think that it is within this court's power to reinstate that first appeal and give him the chance to cure the problem. Different question. Let's just be hypothetical for a second. It's deficient. Assuming it's deficient. Let's assume it's deficient. How do you go any further than that? Well, I mean, under our reading of 4A, 4B, his notice of appeal is ineffective. So this court has no power to do anything to it. That's what our reading of the rule is, and that's how our reading of the case is. It's lying dormant, basically. In limbo. Yes. Indefinitely. Until the district court issues a ruling on the post-judgment motion, his notice of appeal is dormant or unripe. And when the district court issues its decision, it sort of springs into life and becomes effective at that date. And at that point, this court can say, you didn't pay the fees or, you know, you're not filing a brief on time, and let's get rid of this. So you're not saying that it shouldn't have been dismissed. You're saying that the timing of the dismissal was wrong. It was premature. Yes. I mean, and I think it probably – I have a feeling he would have tried to comply with the rules if he had known that the appeal was active, and he should have been filing things at it. But, I mean, if he had been – started going ahead and trying to make his appeal effective and filed a brief, perhaps, then the court would be starting to rule on the merits of his case while a post-judgment motion was still pending and kind of – I don't think you can sort of metaphysically split the case that way. Why would you assume that? I mean, you said that there were two noted deficiencies, the filing fees and meeting the brief. It appears that way. It's unclear. The clerk cites to those rules, and that's my best interpretation of why. Do you want to address Long? Sorry? Have you addressed Long? I'm trying to – Long deals with the prison mailbox rule and also whether or not Lizardo is correct. And I think unless this court is inclined to embank this decision to revisit it. Okay, good. All right, we'll hear you on rebuttal. Thank you. And now Mr. Hazen. May it please the court, good afternoon, Your Honor. Good afternoon. My name is James Hazen. I represent the appellants Cyclechem and Clean Venture Inc. I would like to begin by addressing the court's letter of November 3rd. And question number one is to September 4, 2008, order a final judgment. And I have to answer no and yes. When it was issued, it was not a final judgment. And under Borelli and the Cheyenne against Delaware Department of Transportation case, which is non-precedential, but I'm sure the panel is familiar with it since Judge Rendell was on that panel. Well, don't be so sure of our familiarity. Even Judge Rendell is familiar. All right. Anyway, it's a non-controversial interpretation of Borelli to another fact pattern, and it's useful for that. And that indicates even more clearly than Borelli that when the plaintiff is standing on his complaint and there's a dismissal, then that dismissal becomes final. In this case, in the facts of this case, we were more like hoisted on the petard of our complaint. But when it happened, that's when the decision became final in January 6, 2009. How do we – what do we look at to know, oh, they're standing on their complaint? The amendments were denied. And January 6, 2009, the amendments were denied. We had no alternative but to stand on our initial complaint, and it was dismissed with prejudice. That's how we – in another case, a plaintiff would say, I stand on my complaint. Here, we were stood on our complaint. So it became final when denied, not earlier? And dismissed with prejudice, yes. And the appeal was February 2009, clearly, timely, clearly within 30 days. Now, perhaps I'm wrong, so I'll go to question number two as well, if the honors will permit me. If the September 4, 2008 order is not a final judgment, how does that affect the court's jurisdiction in this case? Now, my esteemed colleague may be taking us to the Supreme Court of the United States on this issue, so I must, out of duty to my client, assert the Sixth Circuit position. I realize under Lizardo and even the dissent, it will not be accepted here. And so I would like to propose an alternative analysis. And that is from – borrowing from amicus and the dissent in Lizardo, which I'm not so sure is a dissent in the fullest sense of the word, since there was no disagreement with Judge Jordan's analysis of the re-argument issue because the majority said it had not been preserved. But on the merits of the re-argument issue, there was no disagreement, but not necessarily endorsement. But I submit that here, under Judge Jordan's analysis and amicus' analysis, the untimely motion does not defeat appeal from the denial of re-argument because there was here a clear assertion of waiver. There was marriage briefing. Marriage briefing, mind you, after amicus briefed the issue. So this is obviously a waiver. Mr. Martin is an astute lawyer. This was the intentional relinquishment of a known right. There's nothing wrong with the state of New Jersey allowing its citizens to assert an appeal one day late. They should have that right. There's clear waiver. There's no forfeiture. The law abhors a forfeiture. This was an intentional relinquishment of a known right by the state of New Jersey, and they should be allowed to do it so that if the appeal from the underlying judgment or the appeal from re-argument are allowed, or both, the result should be the same, since even though there's an abuse of discretion standard on the re-argument issue, both claims are claims of errors of law. So the standard would be the same under either appeal or both appeals. And so that would conclude my presentation on jurisdiction. I'd be happy to answer any questions that the board has. I'm good. All right. Thank you so much, John. Afternoon. May it please the Court. Matthew Duncan from Fine Taplin on behalf of the Amicus Council on behalf of the Court. I guess I should start by thanking the Court for this opportunity, though I have to say when I said yes, I wasn't quite sure what I was getting myself into. You must be kidding. The Council for the Government said it's like a law school examiner. It really is. How about four or five of them? Exactly. In any event, I want to start with some points raised by the panel earlier. First is the Bowles-Fiorelli pool issue. It's a great point, and my perspective on it is that Judge Rendell is right, that Bowles answered the question, that an essentially ratified pool. But there wasn't prison delay, was there? No. It wasn't at issue. There was not. It's very strong, but it's certainly distinguishable. That's right. And ultimately, in the end, I think all three cases can be reconciled. It's a bit messy, but I think it can be done. Yeah, we're all ears. And, you know, I think it also ties in. The starting point really is Section 2107 itself and the language of the statute, and if you look carefully at it, it actually guides the way to reconciling all of this stuff, including the prison mailbox rule in the Houston case. The basic question, let's start with Houston, the mailbox rule itself. The Supreme Court in that case was looking at the definition of the word filed. It's when is, for prisoner purposes, when is a pleading filed. And the court said we will exclude prison delay in that context, and when a prisoner submits outgoing mail to the prison, we will deem it filed under the statute. Here, obviously, we're looking in the other direction. We're looking at outgoing mail. But if this were a situation involving filed and handed to, then you'd say it fits under 2107 because we construe filed. I would. I would. But in this case, we're looking at a different word, and the word is entry. Right. And I think it's very difficult to come up with any interpretation of the entry of judgment other than the day the clerk enters judgment in the docket. There's a federal rule that's defining that word. Well, how about served? Well, but does that matter? The statute says the clock starts ticking at the entry of judgment. And my view is that under Bowles, that term, that language of the statute has to be enforced strictly. No exceptions. No matter what we might think is a reasonable or a fair rule, the statute itself says entry. Entry is under 100 years of case law and a federal rule defined as when the clerk enters the docket. Does that mean something other than filed? But entry can't mean something other than filed. It's a fair question, Your Honor, but that's my reading of the statute and the rule. And the upshot of that is that my view is Bowles requires the clock to start ticking at the entry of judgment. And when you do that, if that's the starting point, Fiorelli can remain on the books as allowing an extension of time, but not an open-ended one. In other words, Bowles and the statute itself put an outer limit on Fiorelli, which is actually the way the court phrased the question in the original issues I was asked to brief. Does Bowles put an outer limit on Fiorelli? And my answer is yes. And the outer limit is either 30 days in an ordinary civil case or 60 days in a case in which the government is a party. When that statutory deadline has run and neither a tolling motion nor a notice of appeal has been filed, my view of the statute is the court has to enforce that statute by its terms. That's Bowles. What was the timing in Fiorelli? Well, the timing in Fiorelli was, if I'm not mistaken, it's a good question, and I don't want to mislead the court. I think the answer is it was prior to the statutory deadline, but I'm not sure about that. What's the remedy for a prisoner who is sitting there waiting to find out what's happened with his habeas petition and even assume bad actors, nefarious people in the prison just hold it until the time expires? That's just – under your view, it's too bad? Not at all. Maybe he's got a 1983 suit against bad prison people. Not at all. And it's actually one of the things I think the court can really clarify in its opinion in these matters, is that there is an approach for that prisoner and there is a remedy for that prisoner, and the remedy is the existing federal rules, Rule 4A5, Rule 4A6, which in substance allow a party, any party, not just a prisoner, that does not receive notice of judgment for legitimate reasons to come to the court and say, look, I didn't get notice of judgment. There's good cause for me needing more time to appeal. File a motion. Under 4A6, when does that have to be done? Well, it has to be done within the deadlines prescribed by the rules. Once we get outside – I get it. 180 days. Exactly. But, okay. That's the hard case, Your Honor. Right. You know, you're sitting around as Judge Jordan's prisoner is, and nothing's happened, nothing's happened. Now you're putting an obligation in the absence of anything happening. You've got to file? It's the hardest question in a case, in my view. If Bowles had been decided differently, I then, you know, Bowles, if there were ever a case where the facts called for some flexibility in the interpretation of 2107, it was Bowles. The court did not decide. The court said 5-4 that that's not how we're going to interpret the statute. It's going to be done rigorously. Recall, if you will, Your Honor, that in Bowles itself, the district court had – you know Bowles. Had no authority. 17 days instead of 14 days. Exactly. And so, given that holding, my view is it's very difficult to say under any circumstances we will allow an appeal period to be reopened after 180 days has run. So the prison puts it in the six-month box. Well, if there is a situation that egregious, I would go back to Judge – now Justice Alito's point in Poole. If there's a situation that egregious, perhaps there are other remedies for a prison that can somehow be shown to have put it in – if that's the pattern, the court is going to know it. Bowles wouldn't allow for any other kind of remedy, any – nothing? Well, there might be a standalone 1983 claim in that instance, but that's a different idea. So you get the images, but you stay in jail. I mean, that's a pretty bad tradeoff for somebody who's got an abuse petition that they can't pursue on appeal, right? Yeah. No, and I'll make two points on it, Your Honor. One is – and this is just something for the court to weigh. I'm not sure there's cases out there about it. But the extent to which it's reasonable to expect that a prisoner, any other party for that matter, with a pending litigation on a docket, you haven't heard anything for six months, you don't know what's going on. What is your duty in that situation? To at least check in on the docket. Now, appellants have made a point in their papers, which is well taken, that we don't necessarily want to encourage prisoners or other litigants to be calling the clerk's office all the time to check up on the status of their case. But having heard nothing for 180 days, is there some measure of responsibility to call the court and check in on your docket? We don't create anything like that in any other context. It's understood. You know, giant company against giant company, billions at stake. It could sit on a district court's very busy docket and not be resolved in 180 days. We wouldn't impute any obligation on any of those. No, I think that's exactly right, Your Honor. And as I say, I do think it's the hardest question in the case. It seems as if a fairly not uncommon situation of prison transfer in this situation led to someone not getting notice within 180 days. And it seems equitable that there should be a way around that. I just don't know how to get there given Bowles and the language of the statute. And Bowles doesn't talk about, you know, how we interpret something. It talks about limited authority. It really talks about the authority of the courts to do something, anything other than what's in the statute. So your view is that this is not claims processing? This is clearly jurisdictional, so it falls within Bowles? Are you saying that it's irrelevant? In that one particular appeal where the 180-day situation is at issue, the 180-day language itself is part of the statute. That one's jurisdictional clearly. Some of these other cases, I think there's still an open question unresolved by Lizardo as to whether the timely filing requirement of Rule 4 is itself jurisdictional. I know where Judge Jordan comes down on that question. But Judge, that said, in the majority, we cannot conclude that it is jurisdictional. Yeah, I think that's right. So whether you – and I think that's right. So, I mean, there's some play in 4A4. The question is whether the claims processing label applies and really an old waiver idea. No, that's exactly right, Your Honor. And as far as taking the next step beyond Lizardo and either making that clear that timely filing is a claims processing rule or, as I had suggested in my original brief, saying that it's jurisdictional itself. By the way, I've reversed course on that, as you may have seen. But in terms of doing that, I think the reasoning of Lizardo, as you say, is pretty clear that it's claims processing. That's certainly what Judge Jordan said in his separate opinion in the case. I think the majority opinion leans strongly that way while dropping a footnote to say we're not going to decide it. I think the court should just be mindful that a non-jurisdictional treatment of that rule does raise some other questions that sooner or later are going to have to get resolved. What's the extent to which parties can consent their way around tolling motion deadlines in the district court? I think that's a question that will need to get answered. That could be – you know, there's the Tenth Circuit's decision in Mitchell, particularly the dissent by Judge Becero, talks about adopting a practice. That's something that could be handled administratively, right, to just say, you know, these are claims processing, but we're not going to exercise our discretion to hear when it's untimely, absent extraordinary circumstances. And so we've got an administrative mechanism in place to boot these when they're not timely, unless you come up with some really good reason why we shouldn't. I mean, doesn't that handle it? I think that approach has much to commend it. And ultimately, thinking through that a little bit, I don't presume to know how the court is structuring administrative processes like that. But thinking about something like that is what ultimately persuaded me that, you know, it can be workable to have Rule 4 be a claim processing rule, not call it strictly a jurisdictional rule. That's consistent with Lizardo. Most of the other circuits except for the Ninth have gone that way. And so ultimately, I reversed course for some of those reasons. I think the Mitchell approach is sensible. I think if this court were to have an administrative procedure like that that screened appeals that appear to be untimely and essentially said, you know, give us a good reason, that seems like a sensible way of handling these, while still having an appropriate measure of flexibility in cases where there really is good cause. Again, I think it's a narrow band of cases, because if this court is clear that the ordinary approach in these circumstances should not be to file an untimely tolling motion. It's to file a motion under Rule 4A5 or 4A6 to reopen the appeal period and proceed that way. That's what the rules say is the right approach. I think this court should consider at least making that clear for parties going forward. Well, and Lizardo talked about the reason for the consistency and the uniformity and the intent of the 2009 amendments. So I think, I mean, our court has said that whatever we do, there ought to be some uniformity and consistency. That point is absolutely correct. And there's no way to look at the history of the rulemaking in this area. And, you know, if the court is interested at all in that, I would direct you to the Miller-Struve-Wright Treatise on Rule 4, which gets way into this. And this is very compelling about the history of the rules and the need for uniformity. And I think Lizardo was correct about that. I see my light is yellow. Really quickly, I wanted to address the cycle PEM issue and start with a quick apology for not myself noticing that the order of dismissal in cycle PEM did include 30 days allowing cycle PEM to file a motion to amend its complaint. That I should have caught at the beginning. It clearly rendered that a non-final, non-appealable order, making, in my view, this whole motion go away in that case. I think the appeal is timely. Unless the court has any questions about that, I think it's pretty straightforward in cycle PEM. And that's because you agree with what we've heard from, excuse me, Mr. Hazen? I'm not sure I agree with all of what I heard from Mr. Hazen, but I think that the original order of dismissal was non-final. And the cases are pretty clear that orders such as that are non-final. And so cycle PEM having been litigated as the district court expected them to, the motions to reconsider and the motions to amend, and there being extensive practice beyond that from which a timely appeal is filed, I think the whole tolling motion issue goes away. And with that said, two final points on disposition before my time runs. I think the first is just a basic point which the court appreciates, which is that in these cases, the district court actually entered an order on the post-judgment motions. So this court is still going to have jurisdiction to review those orders, whatever is the status of the underlying judgments, which is important at least in the long case, the DNA case, because the post-judgment order got deep into the merits of the case in that one at least. So I thought that's a point worth considering in terms of at least getting to the facts of some of these cases. The last point I wanted to flag with the court's indulgence, I'm unread, is a question that was first apparent to me in reading the last set of briefing from the appellants. And that is the extent to which the district court has the authority to construe untimely post-judgment tolling motions as in fact Rule 4A.5 or Rule 4A.6 motions. In other words, litigant files a motion for reconsideration and says, I didn't get notice of judgment. I realize I'm late here by prison mail or whatever reason. I had a good cause for filing an untimely motion for reconsideration. Does the district court in that situation have the authority, should it even, take a motion like that, particularly in a pro se prisoner case and construe it as in fact a request to reopen the time in which to appeal? That's an important question, I think, going forward, especially if the court were to write an opinion saying, look, 4A.5, 4A.6 is the right approach for resolving these issues. Can district courts do some reconstruction of pro se pleadings in that setting? Is that really before us? It's not really, but no, it's certainly not an issue the court has to get to, but it's one that's raised if the next time down the road. Presumably you'd say we'd get that if we thought that PRLE had lost vitality. Yes, that's exactly right. Unless the court has any further questions, thank you very much. Thank you. Good afternoon, Your Honors. My name is Michael Robinson. I'm with the Department of Justice. I represent the Federal Lab Police. I just want to respond to a couple of things that counsel for appellants had suggested, and I think that- Could you pull the microphone up just a little bit? Okay. Thank you. Just there. The first is that whether there's an issue of prison delay with regard to the Barner appeal. There's no allegation that the delay here was caused by the prison officials. This court has suggested that ordinary mail delay is insufficient to invoke any of these rules with regard to- So you're saying the record isn't enough for us to say that the prison delay rule is implicated? Correct, Your Honor. It's not the case. At least not in Barner. If that's true, is it straight up Lizardo application? Absolutely. If that's true, then Lizardo is absolutely controlling. It's on all fours, and it's conclusive in that regard. I would also want to address the issue of the first appeal and the failure to pay the filing fee. That filing fee is just a precondition to the appeal. It has nothing to do with a decision on the merit. And, therefore, whether or not there would be preclusion of deciding an appeal on the merits, the failure to pay the filing fee is not what's precluded, and that's a precondition to the filing of the appeal, and it's not satisfied in this case. But even if we had-even if the rule did apply with regard to timely filed 59E motions, actually suspending the jurisdiction of the Court of Appeals to address these issues, it has to be a timely 59E motion. Okay. Answer the assertion made by your opposing colleague there, that that's an unwarranted insertion of language from 484 into 48B, and we just shouldn't go there. Well, the Supreme Court, in the Browder decision that was relied on in Lizardo, it says that when you have an untimely Rule 59E motion, that motion could not toll the running time for an appeal under Rule 4A. It seems to me that that answers that question, that if it's untimely, it cannot toll the running time for purposes of Rule 4A. With regard to the Fiorelli decision, I think that the amicus council has an interesting notion about how Fiorelli might be at least squared with Bowles. I'm not sure that, in fact, it can fully be squared with Bowles. I think Bowles says that for civil cases, the language of 2107 really must control with regard to all of its limitations. And one of the things that the Supreme Court said in the Bowles decision was, at the end of the day, it was also asked to apply a sort of similar equitable ruling. It was asked if it could apply the sort of unique circumstances rule, and the court responded, this court has no authority to create equitable exceptions to jurisdictional requirements. And I believe that... Do we run into a due process problem? Do we run into a problem if the rules that start where somebody, again, go back to the hypothetical of the prison official that says, fine, we've put this in the six-month box. And then you're done. Is interpreting the rule that way, then, run us right up against the Constitution? Because can it really be the case that a prisoner's opportunity to pursue the great writ depends on the kindness of people in the prison mailroom? You know, I think several people suggested one answer to that is that this person then has a due process claim that he might be able to bring against the prison officials. But under Bowles, in civil cases, the rule is that you have some mechanisms already in 2107 for alleviating the problem of not receiving timely notice of the entry of judgment and that those rules are jurisdictional. Those are basically a motion to reopen. You have 180 days. Unfortunately, even in non-prisoner cases, there is an obligation on the part of the litigant to keep track of the docket. And even prisoners would have the responsibility of filing a letter to the court and seeking to know whether that was true. Can you imagine the Supreme Court, though, faced with this? We say fearily – Bowles didn't cite fearily. Bowles – Bowles is inconsistent. We go with Bowles. I can see the Supreme Court saying, wait a minute, habeas does go by civil rules, but habeas isn't just unique circumstance. Habeas is the great writ. Clearly – I mean, I can see the Supreme Court distinguishing habeas given that opportunity. Well, Poole was also a habeas case, and the rule that then Judge Alito came up with was in that context and still said that really the granter rule cannot be applied in a civil context, even though it was a habeas case. I believe that there is enough give in the joints of 2107 to allow even habeas petitioners the opportunity to seek within a certain amount of time – Now, Poole was a civil rights action. Poole? Poole was civil rights. Yes, that's what the – I am fairly certain that – I thought it was a – I'm looking at the very front. State prisoner brought civil rights action against several state public officials prior to the alleged series of actions. Well, I thought that it was the same type of case. I'm just not sure of what – I mean, it's so strange that Poole – I mean, that there's no reference to Fiorelli. It is strange that there was no reference to Fiorelli. Well, just a point of information. The problem is that it was styled as a petition for writ of habeas corpus, but it was essentially a 1983 petition. Thank you, Your Honor. I don't know whether that answers it completely, but it does suggest that even in that context, the court was treating a habeas motion as – even though underlying that was a civil rights issue as basically raising the same problems that would happen when you have a prisoner seeking redress through the courts under the civil rules. You really think all's over rule Houston would be last? Well, Houston, if I recall, was a question about – was going in the other direction, and it was suggesting that the filing – that when a prisoner hands a document to the government, and there's no other way that he can get that document to court except through the representative of the government, that that's sufficient for filing. I think that that's a slightly different context and, therefore, is not completely implicated in the same way. I think Fiorelli – I think starting with Grana and Fiorelli, moving it in the other direction is already a step aside, but certainly the court in Bowles has given us now the answer to what is the proper procedure in civil cases, and it says that those limitations are jurisdictional. All right. Thank you. Thanks. Mr. Martin. Good afternoon, Your Honors. I'll be very brief. I'm John Martin with the Attorney General of New Jersey's office, and on this issue we agree with Mr. Duncan that under Borelli that was not a final and appealable order. The first order of September 4th, 2008, and the order that triggered the appeal period was the January 6th, 2009 order. Thank you. All right. Thank you. Rebuttal on the jurisdictional issue? Thank you, Your Honor. I only have a few things to add. On page 95 of the supplemental appendix, that is where you will find Mr. Barner's allegation that there was prison delay in his case. He said, in the present case, not only is plaintiff reliant upon mail service, this mail service is affected on him by the Federal Bureau of Prisons BOP employees, and this court need not be briefed on the numerous pitfalls, in quotes, that can become part of this mail process. And, in fact, as happened in the present case, plaintiff did not even receive the district court's order within the three days for service. I think that's enough to send it back down for fact-finding, if that's the only reason Mr. Barner's appeal can be heard. Second, as far as his first appeal goes, nothing was deficient on the face of his notice of appeal, and no one has suggested that. For that reason, I don't think the clerk had the power to take any action. But even the action it took was incorrect. He was proceeding IFP in the district court, and under Appellate Rule 24A.3, that means he proceeds IFP in the appellate court, so he had no need or reason to pay fees. Assuming that it was because he failed to file a brief, I think this court recognizes that in almost every case it issues a briefing schedule, as it did here, and it had not issued a briefing schedule in his case. Doesn't an appellant have an obligation to file for IFP status in the Court of Appeals? I think under Rule 24A.3, he is just considered IFP. I'd have to double-check. I don't know. You're on. Turning to the field. Under B, it says, if a party files a notice of appeal after the court announces or enters a judgment, but before it disposes of any motion listed in 4A.4.A. Well, the motions in 4A.4.A. are timely motions? Well, it's unclear. They're not necessarily timely, and I also, as I mentioned earlier, I think it would be unworkable to import a timeliness requirement into 4A.4.B. because it would be too difficult for the circuit court to tell, without a district court ruling on the timeliness issue, whether or not the post-judgment motion is timely. I also think, as far as whether Fiorelli is still good law, I think it is. As I said earlier, Bowles didn't actually change anything. When Fiorelli was written and when Grana and Houston were written, the courts were dealing with a backdrop where every time limit was considered jurisdictional. Why don't you respond to Mickey's argument that it's one thing to talk about filing. It's another thing to talk about the entry of judgment, and that that really doesn't lend itself to any judicial massaging to get to what might feel like a more equitable result. It just is what it is. Congress has spoken, and so has the Supreme Court. Well, I think this Court's decision of Fiorelli forecloses that analysis, first of all, because it was dealing with what it considered to be a jurisdictional time limit, and it had no problem with massaging and calling entry something other than entry in the docket. But the jurisdictional piece was not front and center at that point. Yeah. Actually, in Fiorelli, the prisoner had filed his notice of appeal more than 60 days after the order that he was appealing from. So under Fiorelli, it was beyond the jurisdictional time limit. And you don't think that Bowles and the remarkably unforgiving, and I'm not meaning that in some normative sense, I just mean it in the strict like time limits are what they are sense, outcome in that case, has any impact on Fiorelli? No. First, because Bowles really was just reaffirming that those time limits in 2107 were jurisdictional. And secondly, if you take it to the extent that the amicus does, those time limits would then mean that the tolling rules in Appellate Rule 4A4 would also be somehow breaking the jurisdictional time limit. Those tolling rules in 4A4A are not jurisdictionally based. They're not based in statute. And if you believe that the 2107's jurisdictional power is such that nothing can change those time limits, then you can't have tolling motions. Then you can't have post-judgmental motions that told the time to appeal. And nobody has suggested that. Doesn't 2107 contemplate that, though? No, actually, Your Honor. I mean, it contemplates filing a motion to reopen the time to appeal. But as far as whether a post-judgmental motion filed in the district court tolls the time to appeal, that's not in the statute at all. That's completely within the federal appellate rules. So if you believe that those rules – sorry. I understand that 4A4 is a product of the Rules Enabling Act and the committee's actions, unlike 4A1 and other parts of Rule 4. I guess what I'm asking – I'm trying to understand what it is you're telling – wouldn't allow for 4A4 to exist? Do you have the assertion? Yes. And no one, I don't think, has suggested that or would think that makes sense under the statute. I think that courts have the ability to control when the time starts and stops, and that's what the court did in Fiorelli. If that's true, then how do you explain Bowles? If courts have the power to control when they start and stop, why was it outside the district court's authority to say, I'm stopping it at 17 days, not 14? I think that in Bowles, there wasn't the application of the prison mailbox rule. I think that that is a recognized exception to the time limits and a gloss on the statute. And with Bowles, there was no gloss that the Supreme Court was dealing with. It was just the district court allowing the parties to file a late filing. But isn't the real answer that 2107 – you can't vary the times that are set forth in 2107. But to the extent 4A4 merely says from which time that time will run, it's something that's not encompassed within 2107. It's different from that. And that's why – I agree. It is different. I think it gets outside the jurisdictional nature of the statute. But for the same reason, the prison mailbox rule also gets outside the jurisdictional nature of the statute. I think it's an interpretation of the statute. I also think – briefly – We're going to ask you to respond to that. I don't want to later try to say to you what it is you're responding to. It's that. Your Honor, finally – well, two things. First, Amicus helpfully raised the question of whether the court should tell the district court to construe some of these post-judgment motions as actually motions to reopen the time to appeal. We did actually raise that in our reply brief in response to his argument on pages 15 and 16 of our reply brief. We asked the court to remand to determine whether or not – to the district court to determine whether or not these should be construed as 4A5 or 4A6 motions. And finally, I think Judge Jordan raised a very good point about whether due process is implicated here. And that's a constitutional standard. That's not just statutory. And due process requires notice and an opportunity to be heard. And if you allow prisoners to be shut out of court for something that – because they never received notice, I think it would violate their due process. Well, what about the response, which is all litigants have a burden to pay attention to what's going on. And even when you're in prison, if months go by with no action, you bear a personal responsibility to start looking into it, asking questions, pushing it, and finding out what's going on. You can't sit back and say, no one told me. You've got to inquire. I think that the danger is two things. First, some prisoners have no ability to contact the court even, whether through writing or not. They might be in solitary. They might have some other sort of restrictions imposed on them that they have no ability to actually contact the court. And that's something that the court, I think, should recognize. Second, even with – That would be a problem regardless of whether we were talking about the procedural niceties we're trying to address today, right? I mean, like, assume that everything worked fine and the person delivered notice and all that stuff. If your assertion is they just can't contact, I mean, that's a completely separate problem, right? Well, not entirely. These guys are in prison. So even if they have the ability to write, that's the only way they have to contact the court. And as Judge Greenaway recognized, we don't impose that requirement on any other litigant to contact the court. And doing so to pro se prisoners would invite them to contact the court on a daily basis because they could always be wondering when something is issued. We do impose that, though. I mean, wouldn't it be precisely the same? Would we be any more sympathetic to a non-prisoner litigant who came in and said, yeah, I know I hadn't heard anything for a long time on my claim, and I must have got lost in the mail. Hear me now anyway. I mean, wouldn't the response instantaneously be, well, you know how to use a phone. You know how to look up what's going on. Perhaps, but prisoners don't have phones. On the other side of this, I presume you'd say the fear is you don't want them making mandamus arguments to the district court, which when made now in those circumstances are frownable. Yes, Your Honor. I think that imposing this burden on pro se prisoners would encourage them to write constantly, asking about the status of their case, if only so that they don't miss an order being issued and then miss their deadline. It wouldn't matter, right? I mean, if you were a prisoner and you can show that you in six months sent 20 letters, would that matter substantively? Well, I don't know. I think that that would be the only way they would be able to protect themselves against missing an order being entered. Really? Do you think they'd have to write every day? Wouldn't it be enough if they waited three months or four months and then contacted the court somehow and said, I haven't heard anything and I'm concerned about missing deadlines. Let me know what's going on. When you say this is an unusual burden to put on them, isn't it the same burden that everybody's got who's working in the system? I think that they are particularly at a disadvantage when it comes to contacting the court, and that's what Houston recognizes. They are at the mercy of the jailers and the prison mail system, and they do not have the freedom that most people have to contact the court. And I think if you ask them to write every three or four months, first, they could miss the 30- or 60-day window to file a notice of appeal if it's every three or four months. And secondly, it could come up against the 180-day time limit as well, for which Amicus says nothing can come beyond that. When you're writing every three or four months, it might take time to get there. What happens if the mail doesn't get to the court and comes back? I mean, we're not dealing with West. I mean, you put it in the mail. It's going to get there more than – it doesn't take two months to get to the court. Will there be circumstances? Might there be circumstances where something goes right? Yeah, or we wouldn't be sitting here today. Well, I think the case where this is coming into play is in Mr. Baker's case, and I think you should recognize that he mailed a notice of change of address to the court. He mailed a letter stating that he had gotten his hands on the docket asking, I see something on the docket. What is this? Please send it to me. And that was, you know, more than a year before he ever actually got the order. And it sounds like he never actually was even served with an official copy of the order. So, I mean, Mr. Baker was trying to find out what was going on with this case. Thank you. Thank you. More layers of the onion. So the issue, as I understand it, is that appellant's argument is that the strict interpretation of the statute that I've put forward would somehow call into question the timely filing rule – well, all of the tolling motion rules, really. They say that if you enforce it strictly, you can't have tolling motions. That that's overriding the statute. I think there are two responses to that. One is just to understand the history of Rule 4. Rule 4 and statute, for that matter, both of which were enacted against a longstanding practice of tolling motions. When the statute was enacted, it was intended to codify existing practice, which was and always has been that post-judgment tolling motions would toll the time to appeal. Now, the statute is not as clear as we would like on that point, but that is, in fact, the history against which it was enacted. Point two is that Congress has explicitly said rulemaking is authorized. This is a separate statutory provision. But Congress has passed another provision saying that the court is authorized to promulgate rules that define the finality of judgments. And I think the tolling motion rules are easily encompassed by that explicit grant of authority, such that any tolling motion rulemaking is not at all inconsistent with the statutory deadlines to appeal. How do you respond to the argument that we just heard from Mr. Willis that to the extent that you could say, oh, the statute was written against the understanding that there are circumstances about when you start and stop the clock that are not dictated strictly by statute but by interpretation from the court, and that applies to the mailbox rule, too, just the way it would with the 4A4 motions? I think if I'm understanding what the court's getting at correctly, the problem with that is we're taking that extra step to say, in effect, that the court has to be able to